# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS COLEMAN, | : | CIVIL NO. 3:10-CV- 545 |
| Petitioner, | : | (Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN RONNIE HOLT, et al., | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

This habeas corpus petition invites the Court to address a legal question regarding the application of the Second Chance Act, a 2008 federal statute designed to provide prison officials with greater discretion in assisting inmates in making the transition back into society by permitting prison officials to place inmates in Residential Re-entry Centers up to 12 months before they are released from custody. Specifically, this petition invites us to determine whether, and to what extent, the Second Chance Act gives federal inmates a substantive right to early release to a halfway house or other non-custodial setting as they near the conclusion of their prison terms.

Although Coleman invites us to reach and resolve all of these constitutional issues, he extends this invitation to us without first having invited the Bureau of Prisons to address his concerns by filing a proper, timely administrative request for relief from this proposed RRC placement decision that Coleman now challenges.

It is recommended that the Court decline this invitation to address these legal issues since it is well-settled that a federal inmate who wishes to bring a habeas corpus petition based upon an alleged failure by prison staff to comply with the Second Chance Act must first exhaust administrative remedies within the prison system. For the reasons set forth below, we conclude that exhaustion of these administrative remedies is a prerequisite to federal habeas corpus relief in this setting, and further find that Coleman has failed to exhaust his administrative remedies, a failure which compels dismissal of this case.

## II. Statement of Facts and of the Case

### A. Francis Coleman

Francis Coleman is a 39-year old federal inmate, who was sentenced on May 21, 1998, in the United States District Court for the District of Massachusetts to a 204 month term of imprisonment for conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846; possession of cocaine base with intent to distribute and distribution of cocaine base (2 counts) in violation of 21 U.S.C. § 841; and aiding and abetting (2

counts) in violation of 18 U.S.C. § 2. (Doc. 10, Declaration of Dave Rigol, Ex. 1 ¶ 2.) Coleman has been incarcerated at the United States Penitentiary, Canaan Camp since October 11, 2005. (Id. ¶ 3.) Assuming Coleman earns all of his good conduct time credit, his projected release date is July 1, 2011. (Id. ¶ 4.)

### B. The Second Chance Act and BOP Implementing Guidance

While Coleman was serving this federal sentence, in April of 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, went into effect. This act contains several provisions which are designed to aid prisoners in their transition back into society. For example, the Act authorizes the Bureau of Prisons to place certain inmates in Residential Re-entry Centers (RRC) for as much as one year at the end of their prison terms to aid them in their readjustment into society. See 18 U.S.C. § 3624(c)(1).[1]

---

[1] 18 U.S.C. § 3624(c) provides as follows:

**( c ) Prerelease custody.**–
**(1) In general.**--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

**(2) Home confinement authority.**--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

While Coleman has been in federal custody the Bureau of Prisons has adopted a series of policies, practices and procedures which govern inmate placement and custody. These policies, in part, speak to the issue of Residential Re-entry Center (RRC) placements of inmates in the year prior to their release dates and direct that, as a result of the Second Chance Act: (1) RRC placements were increased to a maximum of twelve months; (2) RRC placement determinations are to be made on an individualized basis using the criteria set forth at 18 U.S.C. §3621(b); and (3) sentencing court orders, recommendations or requests directing an inmate's placement in an RRC should be considered, but are not binding on the Bureau of Prisons. Delacruz v. Bledsoe, No. 10-139, 2010 WL 1791241,*2 (M.D.Pa. March 3, 2010)(reciting pertinent Bureau of Prisons' policy statements).

The Bureau of Prisons policies also instructed prison staff that all "inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected

---

**(3) Assistance.**--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

**(4) No limitations.**--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621

18 U.S.C. § 3624 (c).

release dates," and set forth the five factors under 18 U.S.C. § 3621(b) which must be considered when determining RRC placement dates. Id. With respect to these factors, the memorandum stated, "the Act requires staff to ensure that each pre-release RRC placement decision is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'" Id. Thus, prison staff were admonished that they "must approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement." Id. The guidance provided to prison staff further stated as follows: "While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager." Id.

In December 2009, following a program review held for Coleman, Coleman's Unit Team recommended that Coleman receive a placement of 9 months at a Boston RRC. (Doc. 10, Ex. 1, Attach.3. )[2]This decision was based on the fact that Coleman

---

[2] The Respondents' affidavit (Doc. 10, Ex.1), asserts that this RRC program review took place on "October 10, 2002." Plainly this date is incorrect since the Second Chance Act had not even been enacted in 2002. The exhibits attached to the affidavit correctly place the date of these events in late 2009.

5

had been incarcerated most of his adult life, he had completed all of his financial obligations, he had completed the Release Preparation Program and Drug Education class, and obtained his GED. (Id.) In addition, staff noted that Coleman maintained clear conduct throughout his incarceration. (Id.) Pursuant to policy, a memorandum was submitted to the Community Corrections Administrator (CCA) with the Warden's approval, requesting the 9 month RRC placement. (Id. ¶ 8; Attach. 4.)

However, on January 11, 2010[3], Coleman was informed by Case Manager Gonzalez that the 9 month requested RRC placement was denied by the CCA because of the lack of bed space at the RRC. (Id. ¶ 9; Attach. 5.) As a result, Coleman was submitted for a 6 month RRC placement based on the same five statutory factors contained in 18 U.S.C. § 3621, as they applied to to Coleman. (Id. ¶ 10.) On February 17, 2010, a recommendation for a 150 to180 day placement at a RRC in Boston, Massachusetts, was submitted and approved by the institution Warden. (Id. ¶ 12; Attach. 7.) Since then, Coleman has been approved for a RRC placement date of January 6, 2011, at the Coolidge House in Boston, Massachusetts. (Id. ¶ 13.)

---

[3]The Respondents' affidavit (Doc. 10, Ex.1), states that Coleman was informed of this decision "January 11, 2001." Plainly this date is incorrect since the Second Chance Act had not even been enacted in 2001. The exhibits attached to the affidavit correctly place the date of this notification at January 11, 2010.

This placement date appears to be largely driven by logistical considerations. According to the Respondents, bed space at many RRC facilities is at a premium, which compels limited duration for RRC placements. (Id. ¶ 14.) The Boston area RRC ordinarily has a limited number of bed spaces due to the heavy population of inmates seeking to be housed there. Since Coleman was sentenced out of Massachusetts and his release residency is Roxbury, Massachusetts, according to the Respondents there are no other viable alternative release destinations for Coleman. (Id.)

    **C.    Bureau of Prisons Grievance Procedures and Coleman's Failure to Administratively Challenge This RRC Placement Decision**

With respect to inmate concerns regarding RRC placements and other matters, the Bureau of Prisons has adopted a three-tiered administrative remedy procedure with respect to inmate complaints which is set forth at 28 C.F.R. § 542.10, et seq. As part of this grievance process, inmates should first present their complaints to staff, and staff are obliged to attempt to informally resolve any issues before an inmate files a formal request for Administrative Remedy. Id. at § 542.13(a). At the second stage of this process, if an inmate is unable to informally resolve his complaint, the inmate may file a formal written complaint to the warden, on the appropriate form within 20 calendar days of the date on which the events which form the basis for the complaint took place. Id. at § 542.14(a). If the inmate's concern is not addressed to the inmate's

satisfaction by the warden's response, the inmate may then file an appeal to the Regional Director within 20 calendar days. Id. at § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the General Counsel (Central Office) within 30 calendar days from the date of the Regional Director's response. Id. The Regional Director then has 30 calendar days to respond and the General Counsel has 40 calendar days to address the inmate's concern. Id. at § 542.18.

As these regulations state: "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own imprisonment." 28 C.F.R. § 542.10(a). Under this grievance process: "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." Id. at § 542.10(c). Furthermore, under these procedures, no administrative remedy appeal is considered to have been fully exhausted until decided by the Central Office. 28 C.F.R. § 542, et seq.

While Coleman has clearly been notified of his proposed RRC placement by prison officials, it is equally clear that Coleman has not sought to exhaust his administrative remedies with respect to this matter before proceeding to federal court. (Doc. 10, Ex.2.) Indeed, while Coleman has used the grievance system in the past to

address other issues, there is no record of Coleman exhausting any administrative relief with respect to this prison RRC placement decision. (Id.) Coleman himself candidly acknowledges that he has not exhausted these administrative remedies in his traverse to the petition which he filed on May 25, 2010. (Doc. 14, p.12), and urges the court to exercise its discretion and waive the exhaustion requirement in his case. (Id.)

### D.     Coleman's Habeas Petition

On March 11, 2010, Coleman filed this petition for a writ of habeas corpus. (Doc. 1.) In his petition Coleman challenges the prison's decision to deny him 12-month early release consideration under the Second Chance Act, arguing that the actions of prison personnel are arbitrary and inconsistent with the law. These issues have been fully briefed by the parties (Docs. 1, 10, and 14) and are now ripe for disposition. For the reasons set forth below, it is recommended that the Court find that Coleman has failed to exhaust his administrative remedies, and dismiss this petition without prejudice.

### III.   Discussion

#### A.    The Exhaustion Doctrine Bars Consideration of This Habeas Petition.

In our view, this petition suffers from a fundamental procedural flaw, since the Petitioner has failed to properly exhaust his administrative remedies within the federal

9

prison system. Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981). These exhaustion rules serve an important and salutary purpose. The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

In this case, it is undisputed that Coleman has not exhausted his administrative remedies with respect to this RRC placement decision. Indeed, Coleman acknowledges this fact in his traverse to the petition (Doc. 14, page 12), but urges the Court to forego exhaustion in the exercise of its discretion. (Id.).With respect to habeas claims like

those presented by here, which seek placement in a residential setting under the Second Chance Act, it is well settled that

> Courts in the Middle District of Pennsylvania have consistently held that "exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate." See Malvestuto v. Martinez, 2009 U.S. Dist. LEXIS 78231, *9 (M.D.Pa. Sept. 1, 2009) (Conner, J.); Melchiorre v. Martinez, 2009 U.S. Dist. LEXIS 91137, *7 (M.D.Pa. Sept. 30, 2009) (Conner, J.); D'Alfonoso v. Martinez, 2009 U.S. Dist. LEXIS 90344, *6 (M.D.Pa. Sept. 30, 2009) (Conner, J.); Torres v. Martinez, 2009 U.S. Dist. LEXIS 70577 (M.D.Pa. Aug. 12, 2009) (Munley, J.); Miceli v. Martinez, 2009 U.S. Dist. LEXIS 71877 (M.D.Pa. Sep. 15, 2008) (Rambo, J.)

Ross v. Martinez, No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Rigorously applying these exhaustion requirements, this Court has consistently rejected habeas petitions brought under the Second Chance Act where inmates have failed to fully exhaust their administrative remedies. See, e.g., Bisulca v. Schism, No. 09-2552, 2010 WL 1805394 (M.D.Pa. May 5, 2010); McCooey v. Martinez, No. 09-1533, 2010 WL 411744 (M.D.Pa. Jan. 25, 2010); Lacy-Thompson v. Martinez, No. 09-1320, 2009 WL 4823875 (M.D. Pa. Dec. 14, 2009); Ferris v. Holt, No. 09-1465, 2009 WL 3260557 (M.D. Pa. Oct. 8, 2009); Drummond v. Martinez, No. 09-1258, 2009 WL 3241851 (M.D. Pa. Oct. 5, 2009).

As Judge Conner has previously explained when dismissing such a habeas petition challenging an RRC placement decision for failure to exhaust administrative remedies:

> [C]ourts in the United States Court of Appeals for the Third Circuit have consistently required an inmate to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus. Exhaustion is required for the following reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Melchiorre v. Martinez, No. 09-1123, 2009 WL 3241678, *2 (M.D.Pa. Sept. 30, 2009).

Nor can an inmate like Coleman avoid this exhaustion requirement by simply asserting that he regards exhaustion as futile. Quite the contrary, as this Court observed in Melchiorre, "exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate. See 18 U.S.C. 3624(c) (1)-(6)." Id. at *3. See also, Bisulca v. Schism, No. 09-2552, 2010 WL 1805394 (M.D.Pa. May 5, 2010)(Conner, J., denying petition on exhaustion grounds).

Because Coleman has not exhausted his available administrative relief regarding the failure to consider him for transfer or community placement under the Second Chance Act, and has not shown that the failure in pursuing administrative relief should be excused, this Court should, as a threshold matter, dismiss the petition for failure to exhaust administrative remedies, without prejudice to the filing of a new § 2241 petition after the petitioner fully exhausts appropriate administrative relief. See also, Lindsay v. Williamson, 271 F. App'x. 158, 160 (3d Cir. 2008);Craig v. Zickefoose, No. 09-6513, 2010 WL 234908 (D.N.J. Jan. 15, 2010); Shoup v. Schultz, No. 09-0585, 2009 WL 1544664, at *4 (D.N.J. June 2, 2009); Breazeale v. Shultz, No. 09-2118, 2009 WL 1438236 (D.N.J. May 19, 2009).

## IV. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2241, IT IS RECOMMENDED that the Petition be DENIED, without prejudice while the Petitioner exhausts his administrative remedies, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition

of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of June, 2010.[4]

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge.

---

[4]This Report and Recommendation was prepared in partnership with *pro se* staff attorney James Van Wie. The Court gratefully acknowledges Mr. Van Wie's assistance in this case.